**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BOBBY R. WILLIAMS,<br><br>Plaintiff,<br><br>vs.<br><br>OMEGA LABORATORIES, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 5:26-cv-357<br><br>CHIEF JUDGE SARA LIOI<br><br>MEMORANDUM OPINION AND ORDER |

In this action, *pro se* plaintiff Bobby Williams ("Williams") alleges defendant Omega Laboratories, Inc. ("Omega") negligently administered a mandatory pre-employment drug screen, resulting in a false positive result for illicit substances and causing his prospective employer to rescind its job offer. (*See generally* Doc. No. 1 (Complaint).) Now before the Court is Omega's motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the complaint as time-barred and for failure to state a cause of action. (Doc. No. 8 (Motion to Dismiss).) Williams filed an untimely opposition to the motion to dismiss (Doc. No. 13), and Omega filed a reply. (Doc. No. 15.) For the reasons to follow, Omega's motion to dismiss is granted.

Also before the Court is Williams' untimely motion to amend the complaint. (Doc. No. 12; *see* Doc. No. 12-1 (Proposed First Amendment Complaint ("FAC")).) Omega opposes the request to amend (Doc. No. 14), and Williams filed a reply in support of amendment. (Doc. No. 16.) Williams' request to amend is denied on the dual grounds of futility and bad faith.

# I. BACKGROUND

## A. 2020 Pre-Employment Drug Testing

The following facts are taken from the complaint and are construed in the light most favorable to Williams. Williams, a resident of Nevada, is a "professional commercial truck driver with over twenty years of experience in the trucking industry[.]" (Doc. No. 1 ¶¶ 5–6.) Omega is a "corporate entity engaged in the business of toxicological and hair follicle drug testing throughout the United States, including within Ohio, and regularly provides drug testing services relied upon by employers making hiring and termination decisions." (*Id.* ¶ 7.)

"In or about May 2020 and June 2020," Williams "sought employment with a national trucking company during the height of the COVID-19 pandemic[.]" (*Id.* ¶ 11.) Williams' employment was contingent upon passing a mandatory hair follicle drug test. (*Id.* ¶ 12.) Williams submitted to the required testing, and his hair follicle sample was sent for laboratory analysis, "including testing [to be] performed by" Omega. (*Id.* ¶¶ 13–14.) Omega reported to Williams' prospective employer that Williams' hair sample tested positive for methamphetamine, despite the fact that Williams had never used methamphetamine or consumed any illegal substances. (*Id.* ¶¶ 10, 15.) As a direct consequence of Omega's "false positive report," the job offer from the prospective employer was rescinded, and Williams was "abruptly deprived of his livelihood during the COVID-19 pandemic," resulting in "immediate financial hardship, including loss of income necessary to support himself and his family." (*Id.* ¶¶ 25–27.)

Unbeknownst to Williams, the same hair sample also was sent to a second laboratory for analysis. (*Id.* ¶ 17.) The "second laboratory returned a negative result for methamphetamine[,]" which Williams avers "demonstrated a serious and obvious testing discrepancy" that should have

been a "red flag" to Omega. (*Id.* ¶¶ 18–20.) According to the complaint, Omega failed to conduct any "meaningful investigation into the conflicting results[,]" and failed to "disclose or reconcile the discrepancy in a manner that would protect [Williams] from wrongful harm." (*Id.* ¶¶ 22–23.) Additionally, Williams avers that Omega failed to follow proper and accepted laboratory practices, and failed to comply with "mandatory federal and professional" testing and reporting obligations. (*Id.* ¶¶ 37–41.)

**B. Federal Lawsuit**

On February 12, 2026, Williams brought suit against Omega in federal court on the basis of federal question and diversity jurisdiction. (*Id.* ¶¶ 1–5.) Under the general heading "NEGLIGENCE AND BREACH OF PROFESSIONAL DUTY" (*see id.* at 7[1] (capitalization in original)), Williams alleges that Omega owed him "a duty to perform toxicological testing with the highest degree of scientific care, accuracy, and professional responsibility." (*Id.* ¶ 45.) He further avers Omega "breached its duty of care by negligently producing a false positive methamphetamine result[,]" and by "failing to investigate or correct the contradictory negative test result produced by another certified laboratory using the same specimen." (*Id.* ¶¶ 47–48.) Williams claims that, as a "direct and proximate result of [Omega's] negligence," he has suffered loss of employment and income, damage to his professional reputation, emotional distress, "[f]inancial instability during the COVID-19 pandemic[,]" and a "[l]oss of future employment opportunities." (*Id.* ¶ 51.) Williams seeks compensatory and punitive damages, costs, and interest. (*Id.* at 11.)

---

[1] All page number references are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

Omega's timely motion to dismiss followed. In its motion, Omega maintains that all of Williams' tort claims (1) are time-barred by the relevant statutes of limitations, and (2) fail to plead a right to relief under Ohio tort law. (*See generally* Doc. No. 8.) On May 26, 2026—more than two months after Omega filed its Rule 12(b)(6) motion—Williams filed an untimely motion to amend his complaint and a response to Omega's motion to dismiss. (Doc. Nos. 12, 13, respectively.) The Court permitted Omega leave to respond to Williams' motion to amend and to file a reply in support of its dispositive motion. (Order [non-document], 05/27/2026.)

## II. MOTION TO DISMISS

While Williams alleges that his hair follicle sample was sent to Omega, who ultimately reported a positive result for methamphetamine to Williams' prospective employer (*see* Doc. No. 1 ¶¶ 14–15; *see also id.* ¶ 25), Omega represented in its motion that it "has been unable to locate any records of a positive methamphetamine test result performed on a specimen identified as having been submitted by [Williams]."[2] (Doc. No. 8, at 2 n.1.) Nevertheless, Omega argues that, even construing each factual allegation in Williams' favor (as the Court must do on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)), the complaint fails to state any claims upon which relief may be granted. Omega also seeks dismissal of the complaint on the ground that the asserted negligence claims—filed almost six years after the alleged false positive test—are barred by the

[2] In Williams' proposed FAC, Williams identifies, for the first time, the prospective employer with whom he applied for a position: Werner Enterprises, Inc. ("Werner"). (Doc. No. 12-1 ¶¶ 11, 25–27.) With this information, Omega claims it was able to obtain Williams' "specimen information from Werner[,]" and determine that, on August 13, 2020, it reported Williams' positive test result to Werner. (Doc. No. 14, at 1 n.1.) While the positive test is mentioned in the complaint, and is integral to Williams' claims, Omega does not provide any documentation for this test or otherwise identify anything to which the Court may take judicial notice. Accordingly, at the Rule 12(b)(6) stage, the Court does not consider Omega's unsupported representation that the positive test was reported to Werner on August 13, 2020. *See Bennett v. Louisville Metro Gov't*, 616 F. App'x 820, 823 (6th Cir. 2015) (refusing to consider counsel's unsupported "assertions on brief"); *see also Comm. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007) (holding that "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment" (citation omitted)).

relevant statutes of limitations. The Court finds that Omega is correct on both scores.

### A. Standard of Review

In the context of a motion to dismiss under Rule 12(b)(6), the sufficiency of the complaint is tested against the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although this standard is liberal, Rule 8 still requires a plaintiff to allege sufficient facts that give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests[.]" *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) (quotation marks and citation omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) (second alteration in original)). In such a case, the plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [and the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

A complaint need not set down in detail all the particulars of a plaintiff's claim. However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79 (stating that this standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988) (citations and internal quotation marks omitted) (emphasis in original), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res*., 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001).

Additionally, the Court recognizes that Williams is proceeding *pro se* in this matter. *Pro se* complaints are to be held to "less stringent standards than formal pleadings drafted by lawyers[,]" and should therefore be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (similar) (citation omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (collecting cases); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading" (quotation marks and citation omitted)).

Applying a liberal construction to the language as a whole in the *pro se* complaint, the Court finds Williams has attempted to bring state law tort claims for professional negligence, tortious interference with a business relationship, defamation, and negligent infliction of emotional distress. (*See generally* Doc. No. 1.) Based on this same language, the Court finds that Williams has not attempted to raise claims sounding in statutory, contract, or federal law.[3] *See Ohio ex rel. Skaggs v. Brunner*, 629 F.3d 527, 531 (6th Cir. 2010) (explaining that "the plaintiff . . . remains the master of a complaint, including the master of what law [he] opts to invoke in filing a claim"); *see also Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (recognizing that a district court is not required to conjure un-pleaded facts or construct claims on a *pro se* plaintiff's behalf (citation omitted)).

### B. The Motion is Treated as Unopposed

As an initial matter, Williams did not file a timely response to Omega's motion. Local Rule 7.1(d) provides that, unless otherwise provided by the court, each party opposing a dispositive motion must serve and file a response within 30 days after service of the motion. L.R. 7.1(d). Omega's Rule 12(b)(6) motion was filed on March 23, 2026. Allowing three additional days for

[3] While Williams alleges violations of federal Department of Transportation ("DOT") regulations (*see* Doc. No. 1 ¶ 38(b)), and the Clinical Laboratories Improvement Act ("CLIA"), 42 U.S.C. § 263a (*see id.* ¶ 38(a)), it is well settled that violations of the DOT regulations or the CLIA do not confer a private cause of action. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 307–08 (6th Cir. 2000) (finding no private cause of action for violations of DOT regulations); *Whitehead v. Edmondson*, No. 1:97-cv-29, 1998 WL 17326, at *1 (N.D. Miss. Mar. 24, 1988) (concluding that the CLIA does not provide a private cause of action); *see Griffin-Ware v. Los Angeles Metro. Transp. Auth.*, No. 2:14-cv-4493, 2015 WL 12830380, at *2 (C.D. Cal. Apr. 29, 2015) (noting that "every court to consider the question has concluded that there is no private right of action for violations of the [DOT's] drug-testing regulations" (collecting cases)).

service by mail, *see* Fed. R. Civ. P. 6(d), Williams' response was due April 27, 2026.[4] Yet, it was filed 29 days later on May 26, 2026. Williams did not move for an extension or for leave to file a late response and does not articulate any reason—let alone a compelling reason—for the extended delay. Even *pro se* litigants are "required to follow the rules of civil procedure and easily-understood court deadlines[.]"[5] *Solomon v. Mich. State Police*, No. 1:08-cv-858, 2010 WL 3475730, at *1 (W.D. Mich. Sept. 2, 2010) (citations omitted); *see Bigi v. Brown*, No. 3:14-cv-282, 2014 WL 7228808, at *1 (S.D. Ohio Dec. 16, 2014) ("[A] *pro se* litigant is nevertheless bound by court deadlines." (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)). And a court is not required to consider an untimely response. *See Castleberry v. Neumann Law P.C.*, No. 1:07-cv-856, 2008 WL 5744179, at *5 (W.D. Mich. July 9, 2008) (disregarding plaintiff's untimely response to defendant's motion for judgment on the pleadings and considering the motion unopposed (citations omitted)); *see also Humphrey v. United States Att'y Gen.'s Off.*, 279 F. App'x 328, 331 (6th Cir. 2008) (holding that when a party fails to file a timely response to a motion, he waives any opposition to that motion (citation omitted)).

Even treating the motion to dismiss as essentially unopposed, however, the Court must still address the merits of Omega's motion and will not grant the motion solely because it is unopposed.

---

[4] The 33rd day after the motion was filed was April 25, 2026, a Sunday. Pursuant to Fed. R. Civ. P. 6(a)(1)(C), where the last day of the period is a Saturday, Sunday, or legal holiday, the period continues to run until the following day that does not fall on a weekend or a legal holiday. Accordingly, to be timely, William would have had to file his opposition by Monday, April 27, 2026.

[5] Williams' opposition brief also exceeds the pages limits set forth in Local Rule 7.1(f). Specifically, Rule 7.1(f) provides that, "[w]ithout prior approval of the Judicial Officer for good cause shown, memoranda relating to dispositive motions must not exceed . . . twenty (20) pages for administrative, standard and *unassigned cases*[.]" L.R. 7.1(f) (emphasis added). "Failure to comply with [the provisions of L.R. 7.1(f)] may be sanctionable at the discretion of the Judicial Officer." *Id.* Williams' memorandum—totaling 46 pages, irrespective of the certificate of service—vastly exceeds the court's page limitation for such a filing. The Court could, therefore, strike the filing for this additional reason.

*See Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991) (holding that, instead of granting an unopposed motion to dismiss simply because it is unopposed, the court must determine whether the movants have discharged their burden); *see also Green v. City of Southfield*, 759 F. App'x 410, 417 (6th Cir. 2018) ("[W]here the adverse party has not responded to a motion to dismiss, the district court must consider the evidence presented and make a determination accordingly." (citing *Carver*, 946 F.2d at 455)).

The Court, therefore, will next consider whether Omega has discharged its burden under Rule 12(b)(6).

### C. Williams' Negligence Claims are Time-barred

"The statute of limitations is an affirmative defense and a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim[.]" *Catalado v. U.S. Steel. Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (citations omitted). A Rule 12(b)(6) motion, therefore, is "generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Id.* But "dismissal is warranted if the allegations in the complaint affirmatively show that the claim is time-barred." *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 464 (6th Cir. 2013) (quotation marks and citation omitted); *see also Castillo v. Grogan*, 52 F. App'x 750, 751 (6th Cir. 2002) ("When a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, sua sponte dismissal of the complaint as frivolous is appropriate." (citation omitted)).

A federal court in Ohio, sitting in diversity, applies Ohio's statute of limitations to determine whether a claim is time-barred. *Arandell Corp. v. Am. Elec. Power Co.*, No. 2:09-cv-231, 2010 WL 3667004, at *4 (S.D. Ohio Sept. 15, 2010) (collecting cases). Under Ohio law, the

statute of limitations for general or professional negligence is four years. *See Invs. Reit One v. Jacobs*, 546 N.E.2d 206, 209 (Ohio 1989) (citing Ohio Rev. Code § 2305.09(D)); *LGR Realty, Inc. v. Frank & London Ins. Agency*, 98 N.E.3d 241, 245 (Ohio 2018). Claims for tortious interference with business relations are also subject to a four-year statute of limitations. *Niederst v. Minuteman Cap., LLC*, No. 1:23-cv-117, 2024 WL 3522413, at *17 (N.D. Ohio July 24, 2024) (citing Ohio Rev. Code § 2305.09(D) and collecting cases). Claims for negligent infliction of emotional distress are subject to a two-year statute of limitations, *see* Ohio Rev. Code § 2305.10; *Lawyers Coop. Publ'g Co. v. Muethins*, 603 N.E.2d 969, 975 (Ohio 1992), and the statute of limitations for a defamation action is one year. *See* Ohio Rev. Code § 2305.11(A). The statute of limitations for a negligence claim begins when the negligent act is committed or when the actual damage or injury results. *Vaughn v. J.C. Penny Co.*, 822 F.2d 605, 610 (6th Cir. 1987) (citations omitted). Accordingly, even if the Court assumes the longer four-year limitations period for negligence actions applies to all of Williams' asserted tort claims, the negligent act or the resulting injury would have had to have occurred on or after February 12, 2022—four years before the filing of the present action—for the claims to be timely.

Williams alleges that he sought employment with a national trucking company "[i]n or about May 2020 and June 2020" (Doc. No. 1 ¶ 11), and that his employment was conditioned on passing a mandatory drug screen. (*Id.* ¶ 12.) He further alleges that the prospective employer immediately rescinded its job offer when Omega reported that Williams tested positive for methamphetamine, resulting in the injuries asserted in the complaint, including the "abrupt[] depri[vation] of his livelihood during the COVID-19 pandemic," and "immediate financial hardship[.]" (*Id.* ¶¶ 15, 25–27.) Based on these "sparse" allegations, Omega argues that "any

alleged wrongful conduct occurred sometime in 2020." (Doc. No. 8, at 5.) Because Williams waited almost six years after the last date he alleges he sought employment to file suit, Omega insists that his claims are untimely and subject to dismissal. (*Id.*)

The analysis is somewhat complicated by the fact that the complaint does not specifically identify the actual date of the drug test. But when the allegations on the face of the complaint "affirmatively indicate[] that the time limit for bringing the claim has passed," the plaintiff cannot "escape the statute by saying nothing." *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992). Rather, a plaintiff must respond by pleading additional facts in avoidance of the statute of limitations or by explaining why the statute of limitations should be tolled. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (noting that the complaint allegations give "rise to the reasonable inference" that the claims were time-barred). In other words, a "[p]laintiff cannot omit the date of his injury to evade the statute of limitations." *See, e.g., Kang v. Sys. Cap. Real Prop. Corp.*, No. 18-cv-13617, 2019 WL 1923206, at *3 (E.D. Mich. Apr. 30, 2019) (citing *Bishop*, 520 F.3d at 519) (further citation omitted)); *see also Cain v. Thompson*, No. 3:19-cv-181, 2020 WL 42897, at *3 (W.D. Ky. Jan. 3, 2020) (noting that "[p]laintiffs cannot rely on their own vagueness . . . to avoid dismissal on statute of limitations grounds").

Here, Williams alleges he applied for the trucking position in April or May 2020, during the "height of the COVID-19 pandemic," and that the drug test was a part of the application process. (Doc. No. 1 ¶¶ 11–12.) The complaint further provides that, as a result of the positive test and the withdrawal of the job offer, Williams was "abruptly deprived of his livelihood during the COVID-19 pandemic[.]" (*Id.* ¶¶ 25–26.) From these allegations, it is evident that the drug test was performed contemporaneously with the application (or shortly thereafter) and the reporting of the

results of the test, and the resulting financial hardship, followed directly on the heels of the test. These allegations give rise to a "reasonable inference" that the claims are time-barred, as the action was filed approximately six years after Williams' sought employment. *See Bishop*, 520 F.3d at 520. Under these circumstances, it was incumbent upon Williams to come forward with additional factual allegations that would show that his claims were either timely filed or were otherwise saved by equitable tolling.

As to the former, Williams concedes that the test performed by Omega, and the reporting by Omega of the false positive result to Williams' employer (and the resulting recission of the job offer), occurred in 2020. Specifically, Williams acknowledges that he "does not dispute that he became aware in 2020 that he had been denied employment after being informed that he had tested positive for methamphetamine." (Doc. No. 16, at 19.) Because he did not file his lawsuit until 2026, his claims, as pleaded, are time-barred.

That just leaves the possibility of equitable tolling. In his response, Williams suggests in conclusory fashion that his complaint allegations "describe ongoing misconduct, continuing injury, continuing reliance upon false information, concealment of material facts, and continuing reputational and professional harm extending well beyond the original testing date." (Doc. No. 13, at 8.) According to Williams, these allegations "implicate both the discovery rule and equitable tolling principles." (*Id.* at 9.) In an abundance of caution, the Court will address these untimely arguments.

First, the "discovery rule," upon which Williams relies, "generally provides that a cause of action accrues for purposes of the governing statute of limitations at the time when the plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained of injury."

*Jacobs*, 546 N.E.2d at 209 (citations omitted). Yet, there is no discovery rule in Ohio for general claims of negligence, *Lone Star Steakhouse & Saloon of Ohio, Inc. v. Quaranta*, No. 01 CA 60, 2002 WL 924630, at *7 (Ohio Ct. App. Mar. 18, 2002), nor for claims sounding in defamation. *See Gentile v. City of Solon*, No. 12-cv-1657, 2013 WL 123621, at *3 (N.D. Ohio Jan. 9, 2013).

Moreover, in addition to acknowledging that he was fully aware in 2020 of the allegedly false positive test result and his prospective employer's recission of his employment offer (*see* Doc. No. 16, at 19), the complaint is clear that Williams knew the test result was inaccurate (Doc. No. 1 ¶ 16 (noting that the test result was a "complete shock" to him because he "had never used methamphetamine")), and that it was the source of his injury. (*Id.* ¶ 25 ("As a direct consequence of [Omega's] false positive report, [Williams'] employer rescinded his employment and terminated his position."); *see also id.* ¶¶ 26–29, 33 (detailing the harm caused by the test).) This "cognizable event" informed Williams that he had been injured and put "him on notice of the need to pursue his remedies." *Mattress Matters, Inc. v. Trunzo*, 74 N.E.3d 739, 742–43 (Ohio Ct. App. 2016) (noting that, under the discovery rule, the statute of limitations is tolled "until a *cognizable event* . . . leads or should lead the plaintiff to believe that he has been injured and thus places him on notice of the need to pursue his remedies" (quotation marks and citations omitted) (emphasis added)). And notwithstanding Williams' position to the contrary (*see* Doc. No. 13, at 8[6]), "[a] plaintiff need not have discovered all the relevant facts necessary to file a claim in order to trigger the statute of limitations." *Trunzo*, 74 N.E.3d at 743 (citations omitted). The discovery rule does not toll the limitations period.

---

[6] Williams complains that defendants improperly assume that he "either knew or reasonably should have known all material facts underlying [d]efendant[s'] misconduct in 2020." (*Id.*)

Second, Williams attempts to invoke the "continuing violation" doctrine by suggesting the existence of a "continuing injury," and Omega's "continuing reliance upon false information[.]" (Doc. No. 13, at 8.) But "continuing violations are distinguished from 'continuing effects of prior violations'; in this context, '[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from the original violation.'" *Cooper v. City of West Carrollton*, 112 N.E.3d 477, 485–86 (Ohio 2018) (quoting *State ex rel. Nickoli v. Erie MetroParks*, 923 N.E.2d 588, 594 (Ohio 2010) (further citations omitted)). The fact that Williams continues to experience the effects from Omega's alleged false positive report does not constitute a continuing violation. *See Naiman Fam. Partners, L.P. v. Saylor*, 161 N.E.3d 83, 89 (Ohio Ct. App. 2020) (holding that "the present effects of past violations do not trigger a continuing violation exception" (citation omitted)). Similarly, the "failure to rectify a prior [wrongful] act is not sufficient to meet the standard for invoking the continuing-violations doctrine." *Pittman v. Spectrum Health Sys.*, 612 F. App'x 810, 813 (6th Cir. 2015); *see Edison v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) ("Passive inaction does not support a continuing violation theory." (citations omitted)).

There is no basis for finding that the governing statutes of limitations have been equitably tolled or otherwise do not apply to Williams' claims. Accordingly, the claims are time-barred and must be dismissed.

**D. The Complaint Fails to State a Cause of Action**

In addition to being time-barred, Omega posits that each negligence claim is deficiently pleaded. (Doc. No. 8, at 5–11.) Omega, therefore, also argues that Williams has failed to state a cognizable tort claim against it, and the complaint should be dismissed for this additional reason.

(*Id*. at 12.)

1. *Professional Negligence*

"To establish liability for negligence, one must prove the existence of a duty, a breach of that duty, and injury proximately resulting from that breach." *Hall v. United Labs., Inc*., 31 F. Supp. 2d 1039, 1043 (N.D. Ohio 1998) (citing *Menifee v. Ohio Welding Prods., Inc*., 472 N.E.2d 707, 711 (Ohio 1984)). "The existence of a duty in a negligence action is a question of law for the Court to determine." *Id*. (citing *Blanton v. Pine Creek Farms*, 654 N.E.2d 1027, 1032 (Ohio Ct. App. 1995)).

In his complaint, Williams alleges that Omega "owed [him] a duty to perform toxicological testing with the highest degree of scientific care, accuracy, and professional responsibility." (Doc. No. 1 ¶ 45.) "Although there is no case law in Ohio concerning the duty owed to employees by drug testing companies, in negligence cases, Ohio courts have generally applied the economic-loss rule, 'denying recovery in negligence for purely economic loss.'" *Sagraves v. Lab One, Inc*., 316 F. App'x 366, 369 (6th Cir. 2006) (quoting *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co*., 537 N.E.2d 624, 630–31 (Ohio 1989)). Under this rule, there can be no duty to exercise care to avoid purely economic loss that does not result in "tangible physical" harm to persons or property. *Id*. (quoting *Floor Craft Floor Covering, Inc. v. Parma Cnty. Gen. Hosp. Ass'n*, 560 N.E.2d 206, 208 (Ohio 1990)).

In *Sagraves*, the defendant laboratory was hired by an employer to provide drug testing services. 316 F. App'x at 368. When a positive drug screen for illegal substances ultimately resulted in an employee's termination, the employee sued the laboratory. *Id.* Because there were no allegations of any physical damage to the employee or property caused by the drug screen, the

court found that the plaintiff had failed "to satisfy the requisite duty of care necessary to establish his negligence claim." *Id.* at 369. Similarly here, there are no complaint allegations that the purported false test caused any physical damage. Rather, the complaint alleges that Williams suffered economic damages, including the loss of his job, the loss of income and livelihood, and damage to his professional reputation. (Doc. No. 1 ¶¶ 25–28, 51.[7]) He has, therefore, failed to plead a cognizable duty of care under Ohio law, and his negligence claim must, therefore, be dismissed.[8]

### 2. *Negligent Infliction of Emotional Distress*

Williams has also failed to sufficiently plead a claim for negligent infliction of emotional distress. "Ohio courts do not recognize a separate tort for negligent infliction of emotional distress in the employment context." *Hatlestad v. Consol. Rail Corp.*, 598 N.E.2d 1302, 1307 (Ohio Ct. App. 1991) (citation omitted). To recover for emotional harm negligently inflicted by Omega, therefore, Williams must bring a "traditional" negligent infliction of emotional distress claim, "which requires [him] to show that he (1) was a bystander to an accident, (2) reasonably appreciated the peril thereof, and (3) suffered serious and foreseeable emotional distress as a result

[7] Williams alleges, without any supporting factual enhancement, that he experienced "humiliation, emotional distress, anxiety, and depression as a result of the false accusation [regarding his alleged drug use]." (*Id.* ¶ 29.) Courts have determined that similar boilerplate allegations of emotional distress and humiliation resulting from adverse employment health testing do not constitute physical damages for purposes of the economic-loss rule. *See, e.g, Peters v. Monroe Twp. Bd. of Trs.*, No. 2:11-cv-83, 2011 WL 3652719, at *4 n.4 (S.D. Ohio Aug. 18, 2011) (firefighter employee's negligence action against medical provider of workplace physicals was barred by economic-loss doctrine, despite "cursory" emotional distress allegations).

[8] Williams also alleges that Omega "breached its duty of care by failing to investigate or correct the contradictory negative test result produced by another certified laboratory using the same specimen." (Doc. No. 1 ¶ 48.) Williams fails to allege any factual allegations that would support a finding that Omega knew or should have known about this contradictory test performed by another laboratory. More to the point, Ohio law does not recognize a claim for negligent and/or reckless "investigation." *Colley v. Crabtree*, 235 N.E.3d 562, 576 (Ohio Ct. App. 2024) (collecting cases).

of his cognizance or fear of the peril." *Id*. (citing *Paugh v. Hanks*, 451 N.E.2d 759, 761 (1983)); *see Heiner v. Moretuzzo*, 652 N.E.2d 664, 669 (Ohio 1995) ("Ohio courts have limited recovery for negligent infliction of emotional distress to such instances as where one was a bystander to an accident or was in fear of physical consequences to his own person." (quotation marks and citations omitted)).

In *Heiner*, the plaintiff "alleged that she had been negligently diagnosed HIV positive and sought recovery for the emotional injuries resulting from the misdiagnosis." 652 N.E.2d at 668. There, the Ohio Supreme Court agreed with the court of appeals that the plaintiff could not maintain such a claim because "the claimed negligent diagnosis never placed appellant or any other person in real physical peril, since appellant was, in fact, HIV negative." *Id*. The court went on to hold that, under these circumstances, even if the emotional distress was serious, Ohio case law would not support such a negligence claim. *Id*. at 670. Applying the same logic to the present case, Williams cannot maintain a negligence claim for emotional distress because he has not alleged, and in any event could not establish, that the faulty drug test placed him or anyone else in any physical peril.

Williams has failed to plead a claim for negligent infliction of emotional distress.

*3. Defamation*

Williams also alleges that he suffered damage to his "professional reputation" and that the "false drug result branded him as a methamphetamine user within an industry that depends heavily on trust and safety compliance." (Doc. No. 1 ¶ 28.) To prevail on a claim for defamation under Ohio law, "a plaintiff must prove the following elements: (1) a false statement, (2) about the plaintiff, (3) was published without privilege to a third party, (4) with fault or a least negligence

on the part of the defendant, and (5) the statement was either defamatory per se or caused special harm to the plaintiff." *Tharp v. Hillcrest Baptist Church of Columbus*, 204 N.E.3d 709, 723 (Ohio Ct. App. 2022) (quotation marks and citations omitted).

Even if the published statements defamed the plaintiff, a plaintiff will not prevail on a defamation claim if the statements were subject to a qualified privilege. *See Hall*, 31 F. Supp. 2d at 1044. "A qualified privilege is recognized where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it." *Id.* (recognizing that "[f]requently, there is legal, as well as moral, obligation to speak, and oftentimes, involves those who have entered into business dealings with one another" (citation omitted)). A qualified privilege may only be overcome by "clear and convincing evidence of actual malice on the part of the defendant." *Tharp*, 204 N.E.3d at 724 (quotation marks and citations omitted).

The complaint provides that Omega is engaged in the business of providing toxicological and hair follicle drug testing services to employers for purposes of making hiring and termination decisions, that Omega performed a hair follicle drug test on a sample provided by Williams, and that Omega reported the results of the test to Williams' prospective employer. (Doc. No. 1 ¶¶ 4, 7, 14–15, 25.) Where a laboratory is contractually obligated to perform drug testing screens for employers, courts have found that the communication of the results of such testing by the laboratory to the employer enjoys a qualified privilege. *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 313 (6th Cir. 2000) (defendants' statements consisting of conference calls and fax transmissions amongst defendant companies involved in DOT drug testing were qualifiedly privileged); *Hall*, 31 F. Supp. 2d at 1044 (laboratory performing workplace drug testing had a qualified privilege to report positive test results to employer). The complaint fails to identify any

factual allegations that, if believed, would constitute clear and convincing evidence of actual malice necessary to overcome the privilege. Accordingly, Williams' defamation claim fails as a matter of law.

*4. Tortious Interference with Business Relationship*

Finally, Williams alleges Omega's actions deprived him of his "livelihood" and destroyed his "employment prospects and professional standing[,]" and that, as a result, he lost "future employment opportunities." (Doc. No. 1 ¶¶ 26, 33, 51(e).) To state a claim of tortious interference with a business relationship under Ohio law, Williams must allege facts to plausibly show: (1) the existence of a contract or business relationship, (2) Omega's knowledge of the contract or relationship, (3) an intentional interference causing a breach or termination of the relationship, (4) the lack of justification or privilege, and (5) resulting damages. *BCG Masonic Cleveland, LLC v. Live Nation Enter., Inc.*, 570 F. Supp. 3d 552, 557 (N.D. Ohio 2021) (quotation marks and citations omitted). "'A vague assertion that a party interfered with certain unspecified business relationships is insufficient to state a claim.'" *Id.* at 559 (quoting *Barrio Bros., LLC v. Revolucion, LLC*, No. 18-cv-2052, 2020 WL 3547014, at *7 (N.D. Ohio June 30, 2020) (further citation omitted)).

Williams does not allege any facts demonstrating that Omega intended to cause the termination of any of Williams' business relationships. At best, the complaint alleges that Omega's negligence in conducting the test and investigating (or failing to investigate) a contradictory test result—which included failing to follow certain testing procedures and quality controls—caused termination of the relationship with his prospective employer, and caused damage to possible future business and/or employment relationships. (Doc. No. 1 ¶¶ 15, 25, 33, 45–51.) The lack of any factual allegations showing intentional interference is fatal to his claim because Ohio does not

recognize a tort of negligent interference with a contract or business relationship. *See Wauseon Plaza Ltd. P'ship v. Wauseon Hardware Co.*, 807 N.E.2d 953, 963 (Ohio Ct. App. 2004) (citation omitted).[9]

Additionally, the claim fails because it is evident from the complaint that Omega was an agent of the prospective employer and was fulfilling its duties owed to the employer when it performed the drug test and was, therefore, privileged to intervene in the business relationship. *See Peters v. Monroe Twp. Bd. of Trs.*, No. 2:11-cv-83, 2011 WL 3652719, at *6 (S.D. Ohio Aug. 18, 2011) (entity that contracted with employer to perform employee fitness tests was not an outsider to the employment relationship and could not be sued for tortious interference with business relationship (citation omitted)); *Hall*, 31 F. Supp. 2d at 1043 (laboratory performing drug testing for employer was privileged to intervene in employer-employee relationship). Because the factual allegations, if believed, would not support the absence of a privilege, the tortious interference claim fails to state a cause of action for this additional reason.

## III. MOTION TO AMEND

Williams also seeks leave to amend his complaint (Doc. No. 12), and he appends to his motion a proposed FAC. (*See* Doc. No. 12-1.) Federal Rule of Civil Procedure 15, in pertinent part, permits a party to amend its pleading "once as a matter of course" within 21 days after serving it or within 21 days after service of a motion under Rule 12(b). Fed. R. Civ. P. 15(a)(1). All other

[9] Williams also alleges, without elaboration, that Omega's conduct was "reckless, willful, and demonstrated conscious disregard for the foreseeable harm to" him. (Doc. No. 1 ¶ 52.) He offers, however, no factual enhancement that would provide a foundation for this "[t]hreadbare recital[]" of the elements of this claim. *See Iqbal*, 556 U.S. at 678 (citation omitted). And the negligent acts he cites—failing to follow national standards for laboratory testing and quality assurance, failing to meet professional standards, and failing to implement internal safeguards to detect false positive results—do not rise to the level of malicious or wanton behavior. *See Peters*, 2011 WL 3652719, at *7 (allegations that medical provider hired to perform employee fitness evaluations applied improper standards did not rise to the level of malicious or wanton behavior necessary to establish that the provider's conduct was intentional or reckless).

amendments can be made only with the opposing party's written consent or leave of court. Fed. R. Civ. P. 15(a)(2). Even affording three days for mailing, Williams' motion to amend was filed 40 days beyond the 21-day deadline for filing after service of a Rule 12(b) motion. Because Omega opposes the motion, Williams, therefore, may only amend with leave of court.[10]

### A. Standard of Review

While leave to amend should be freely given under Rule 15(a), such permission may be denied in the case of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182, 83 S Ct. 227, 9 L. Ed. 2d 222 (1962). An amendment is futile if it would not withstand a motion to dismiss under Rule 12(b)(6). *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citations omitted). "The policy consideration behind futility analysis and motions to amend is to prevent the expenditure of unnecessary effort and resources by the parties as well as the court." *Viera v. The Gen. Auto. Ins. Servs.*, No. 3:19-cv-901, 2020 WL 12932420, at *3 (M.D. Tenn. Apr. 30, 2020) (citation omitted).

### B. Discussion

In his proposed FAC, Williams identifies, for the first time, the prospective employer with whom he sought employment in 2020—defendant Werner Enterprises Inc. ("Werner")—and seeks to add Werner as a defendant. (*See* Doc. No. 12-1, at 1 & ¶¶ 11–12.) He also attempts to add further

[10] Additionally, Williams' reply brief in support of his motion to amend (Doc. No. 16)—totaling 37 pages, irrespective of the certificate of service—substantially exceeds the 20-page limit set forth by L.R. 7.1(f). As was the case with Williams' brief in opposition to Omega's motion to dismiss, the Court could strike the reply as a sanction. In an abundance of caution, however, the Court considers this non-compliant filing.

scientific and laboratory standards he believes Omega disregarded or failed to meet (*see, e.g.*, *id.* ¶¶ 34–36, 60), as well as conclusory allegations relating to fraud and fraudulent concealment. (*See, e.g.*, *id.* ¶¶ 38–39, 52, 72–73, 75–79, 81, 89, 91, 98–101, 110, 122, 128–29.) He suggests that his proposed FAC "merely refines, expands, and properly characterizes the legal consequences arising from" the facts in the original complaint. (Doc. No. 12, at 6.) While the proposed FAC adds considerable length to the pleading, it fails to overcome the deficiencies in the original complaint—highlighted in Omega's motion to dismiss—and otherwise fails to state a timely claim for relief.

1. *Williams' Motion to Amend is Denied as Futile*

a. <u>Negligence Claims are Time-barred</u>

The proposed FAC fails to plead factual allegations, missing from the original complaint and discussed *supra*, that would state a cause of action under any negligence tort theory advanced in the initial pleading. Moreover, as noted, Williams' negligence claims are governed by a four-year statute of limitations, and the discovery rule does not apply to these claims. *See Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp. 2d 722, 737–38 (S.D. Ohio 2009) (citations omitted). Williams' proposed amended pleading does not plead any factual allegations that would demonstrate that they occurred within the four-year statute of limitations. *See White v. Barrington Golf Club*, No. 5:22-cv-130, 2023 WL 4133979, at *5 (N.D. Ohio June 22, 2023) ("Ohio law recognizes that a cause of action accrues when the right to prosecute it begins." (quotation marks and citations omitted)); *see also Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 473 (6th Cir. 2013) (holding that, generally, a cause of action accrues when the wrongful act is committed (citations omitted)).

The proposed FAC, however, purports to add certain fraud claims, including a claim for fraudulent concealment. (*See* Doc. No. 12-1 ¶¶ 103–130.) Fraudulent concealment will toll a statute of limitations for a negligence claim where a defendant took affirmative steps to conceal the plaintiff's cause of action and, as a result, plaintiff could not have discovered the claim within the applicable time period despite exercising due diligence. *Guy v. Mercantile Bank Mortg. Co.*, 711 F. App'x 250, 253 (6th Cir. 2017) (quotation marks and citation omitted); *Darby v. Twinsburg Twp.*, No. 29593, 2020 WL 2060601, at *3 (Ohio Ct. App. Apr. 29, 2020) (quotation marks and citation omitted). Claims of fraudulent concealment, including the circumstances constituting the fraud, must be pled with specificity. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446 (6th Cir. 2012) (citation omitted); *Aluminum Line Prods. Co. v. Brad Smith Roofing Co.*, 671 N.E.2d 1343, 1351 (Ohio Ct. App. 1996) (citation omitted); *see Pointe At Gateway Condo. Owner's Ass'n, Inc. v. Schmelzer*, Nos. 98761, 99130, 2013 WL 4510576, at *10 (Ohio Ct. App. Aug. 22, 2013). The circumstances constituting the fraud include "the time, place and content of the false representation [or concealment]; the fact misrepresented [or concealed]; the identification of the individual giving the false representation [or concealment]; and the nature of what was obtained or given as a consequence of the fraud." *Aluminum Line Prods. Co.*, 671 N.E.2d at 1351 (citations omitted).

Here, Williams has failed to plead with specificity any of the facts constituting the circumstances of the alleged fraud. Williams alleges that defendants "knowingly concealed, suppressed, [and] failed to disclose" the results of the alleged subsequent negative tests performed by another laboratory. (*See* Doc. No. 12-1 ¶¶ 108, 110; *see also id.* ¶¶ 79–81.) Yet, Williams fails to plead *any* facts associated with this contradictory test, including the laboratory that performed the test, the date of the test, or the date Omega learned (or should have learned) of the test. Rather,

the proposed FAC is confined to conclusory statements of concealment, which fail to properly plead the claim, and, therefore, fail to save Williams' negligence claims.

Additionally, a fraudulent concealment claim requires the pleading of factual allegations of "'affirmative acts of concealment.'" *Carrier Corp.*, 673 F.3d at 446 (quoting *Hamilton Cnty. Bd. of Comm'rs v. Nat'l Football League*, 491 F.3d 310, 319 (6th Cir. 2007)). "'[M]ere silence, or [an] unwillingness to divulge one's allegedly wrongful activities, is not sufficient' to warrant tolling." *Guy*, 711 F. App'x at 253 (quoting *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1465–72 (6th Cir. 1988)). "[T]here must be some trick or contrivance intended to exclude suspicion and prevent inquiry." *Id.* (quoting *Carrier Corp.*, 673 F.3d at 446–47).

At most, Williams has alleged that defendants remained silent upon learning, at some unidentified point in time, of a contradictory test by an unknown laboratory. (*See, e.g.*, Doc. No. 12-1 ¶¶ 79 (defendants "concealed, suppressed, minimized, ignored, and/or failed to disclose"), 80 (defendants "failed to disclose material facts"), 81 (defendants "withheld and concealed such information because disclosure would have undermined the credibility of the reported positive result and exposed the existence of serious testing failures and misconduct"), 108 (defendants "failed to disclose").) Beyond offering conclusory language relating to concealing, suppressing, or minimizing facts associated with this contradictory test, Williams offers no affirmative actions, such as "some trick or contrivance," taken by defendants to fraudulently conceal their alleged misconduct. These allegations fail to rise to the level of fraudulent concealment. *See, e.g., Carrier Corp.*, 673 F.3d at 447 (conclusory language of concealment, coupled with allegations amounting to "an unwillingness to provide information[,]" are insufficient to establish a claim of fraudulent concealment).

b. New Fraud Claims are Time-barred

In addition to fraudulent concealment, the proposed FAC purports to allege other fraud claims. Under Ohio law, a claim for fraud is governed by the same four-year limitations period that applies to negligence claims. *See Cundall v. U.S. Bank*, 909 N.E.2d 1244, 1249 (Ohio 2009) (citation omitted); Ohio Rev. Code § 2305.09(D). Unlike negligence claims, however, fraud claims are subject to the discovery rule. Under that rule, "a fraud claim does not accrue, and the limitations period does not begin to run, 'until the fraud is discovered.'" *Trost v. Hotchkiss*, No. 22-3701, 2023 WL 5282698, at *2 (6th Cir. Apr. 24, 2023) (quoting Ohio Rev. Code § 2305.09). The discovery of the fraud—including the date of the discovery—must be pled with specificity. *See Stewart Coach Indus., Inc. v. Moore*, 512 F. Supp. 879 (S.D. Ohio 1981) (holding that "when a complaint affirmatively indicates that the alleged fraud occurred at a remote time, such that it would ordinarily be barred by the statute of limitations, it becomes the duty of the plaintiff who seeks to rely on the 'discovery rule' to affirmatively and particularly plead the date of the discovery, as a material averment under [Fed. R. Civ. P. 9(b), (f)], or face dismissal of the complaint" (citations omitted)). Williams failed to plead the date in which he learned of the contradictory negative test, and, for this reason alone, he may not rely on the discovery rule to save his untimely fraud claims. *See also Bruce v. City of Mansfield*, No. 1:23-cv-373, 2025 WL 524304, at *5 (N.D. Ohio Feb. 18, 2025) (on summary judgment, plaintiff's fraud claims were determined to be time-barred where plaintiff failed to come forth with a specific date on which he discovered his injury, instead relying on "[c]onclusory statements unadorned with supporting facts" (quotation marks and citation omitted)).

Moreover, Williams "does not dispute that he became aware in 2020 that he had been denied employment after being informed that he had tested positive for methamphetamine." (Doc. No. 16, at 19.) He argues, however, that this knowledge does not "necessarily establish[], as a matter of law, that he also knew every material facts underlying [d]efendants' alleged fraud, concealment, misrepresentation, and continuing misconduct." (*Id.* at 18–19.) Yet, "under Ohio law, it is '[c]onstructive knowledge of facts' that triggers the statute of limitations for fraud-based claims under the discovery rule. That standard requires only 'facts sufficient to alert a reasonable person of the *possibility* of fraud.'" *Joseph v. Joseph*, No. 19-3350, 2022 WL 3536273, at *8 (6th Cir. Aug. 18, 2022) (quoting *Cundell v. U.S. Bank*, 909 N.E.2d 1244, 1250 (Ohio 2009) (emphasis in original)); *see Trost*, 2023 WL 5282698, at *2 (noting that the discovery rule "does not require the victim to possess concrete and detailed knowledge of the alleged fraud" (quotation marks and citations omitted)). The discovery rule "impose[s] upon the plaintiff a positive duty to use diligence in discovering the existence of a cause of action." *Med. Mut. of Ohio v. K. Amalia Enters., Inc.*, 548 F.3d 383, 391 (6th Cir. 2008) (quotation marks and citation omitted). "When determining whether the exercise of reasonable diligence should have discovered a case of fraud, the relevant inquiry is whether the facts known would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry[.]" *Cundell*, 909 N.E.2d at 1250 (quotation marks and citations omitted).

Here, by his own admissions, William knew of Omega's positive test in 2020, and knew that the test was false because he had never consumed methamphetamines. (Doc. No. 16, at 19; Doc. No. 12-1 ¶¶ 13, 18.) In fact, he admits that he knew enough to obtain additional independent drug tests, "each of which returned negative results for controlled substances." (Doc. No. 12-1 ¶

32.) While he alleges that these "subsequent negative tests further confirmed the unreliability and falsity" of Omega's positive test (*see id.* ¶ 33), he waited until 2026 to file his lawsuit. The Court finds that such knowledge would have led a fair and prudent individual to use ordinary care and diligence to make further inquiry and act upon the results of that inquiry. Accordingly, Williams cannot rely on the discovery rule to save his untimely fraud claims.

Moreover, the fact that Williams admits that he knew in 2020 of his injury (the loss of his job and the alleged economic and emotional hardships that followed) further disqualifies him from relying on the discovery rule. (Doc. No. 16, at 19.) The Supreme Court "has 'been at pains to explain that the discovery of the injury, not the discovery of the other elements of a claim, is what starts the clock.'" *Guy*, 711 F. App'x at 253 (quoting *Rotella v. Wood*, 528 U.S. 549, 555, 120 S. Ct. 1075, 145 L. Ed. 2d 1047 (2000)). Here, Williams was injured when he lost his job due to Omega's reported test results. (Doc. No. 12-1 ¶ 30.) Because Williams knew in 2020 that he was injured by Omega's actions, his claims are time-barred for this additional reason.[11] *See, e.g., Guy*, 711 F. App'x at 253 ("Because the discovery rule does not extend beyond discovery of the injury," and the discovery of the injury occurred outside the governing limitations period, the claim was time-barred).

*2. Williams' Motion to Amend is Denied for Bad Faith*

Alternatively, the Court finds that the motion to amend may be denied because it was filed in bad faith. Williams is correct that a motion to amend can represent an appropriate response to a

[11] On August 11, 2026, Williams filed a document styled, "Verified Petition and Complaint[.]" (Doc. No. 18 (Verified Complaint).) Because he filed it without leave, in violation of Fed. R. Civ. P. 15(a)(2), the Court struck the filing. Yet, even if the Court considered this untimely filing, dismissal of this action as time-barred would still be appropriate. Indeed, in this filing, Williams concedes that he learned of Omega's alleged erroneous test on August 12, 2020, more than five years before he filed suit. (*See* Doc. No. 18 ¶ 23.) While this latest filing adds further factual details, these facts do not rescue his claims from being time-barred.

Rule 12(b)(6) motion to dismiss the complaint. (Doc. No. 16, at 16.) *See Nichols v. Vill. of Minerva*, No. 5:14-cv-613, 2015 WL 845714, at *3 (N.D. Ohio Feb. 25, 2015) (noting that curing deficiencies in a pleading by way of amendment conserves a court's resources and "is an accepted and expeditious way to more quickly reach the merits of a dispute" (citation omitted)); Fed. R. Civ. P. 15(a)(1)(B) (permitting amendment in response to a motion to dismiss). In fact, "the most common use of Rule 15(a) is by a party seeking to amend in order to cure a defective pleading." 6 Charles Alan Wright and Arthur Miller, *Fed. Prac. & Proc. Civ.* § 1474 (3d ed. 2019).

Yet, it appears in the present case that the untimely motion to amend is brought—not to cure pleading deficiencies identified in Omega's Rule 12(b)(6) motion—but rather to repackage previously pleaded negligence claims as fraud claims so as to avoid the statute of limitations by invoking the discovery doctrine. In advancing his fraud claims, Williams predominately relies on the same sparse factual allegations, and merely adds conclusory language that indicates that the factual conduct was performed fraudulently, maliciously, or in bad faith. Such litigation tactics smack of bad faith. *See, e.g., Lea v. U.S. Dep't of Agric.*, Nos. 13-5969, 13-6191, 2014 U.S. App. LEXIS 24835, at *12 (6th Cir. June 4, 2014) (finding that the district court did not abuse its discretion when it denied a motion to amend that "merely 'repackaged' [the negligence] claims under a theory that defendants committed fraud—which is governed by a longer statute of limitations period" (only LEXIS cite available)).

The conclusion that Williams' proffered amendment is made in bad faith is reinforced by what is *missing* from the new pleading. While the proposed FAC adds considerable length to the original pleading, it also removes certain allegations that tethered the claims to a certain time period. In particular, Williams omitted allegations that he was "abruptly deprived of his livelihood

during the COVID-19 pandemic," that he "suffered immediate financial hardship," and that he "took immediate steps" to clear his name. (*Compare* Doc. No. 1 ¶¶ 26–27, 30; *with* Doc. No. 12-1.) These omissions or deletions are obviously made for an improper purpose and provide an independent reason to deny the motion to amend. *See, e.g., United Wholesale Mortg., LLC v. Mortg. Sols. FCS, Inc.*, No. 24-cv-10376, 2024 WL 7021211, at *4 (E.D. Mich. Nov. 22, 2024) (motion to amend to remove paragraph alleging facts that would have demonstrated the claim was time-barred was made in bad faith); *see also Kott v. Howmedica Osteonics Corp.*, No. 15-cv-11349, 2015 WL 13037419, at *7 (E.D. Mich. Oct. 13, 2015) (denying request for leave to amend where only possible amendment would be to remove or alter allegations anchoring the claims to a particular time period and noting that such an "amendment would, at best, unnecessarily extend this litigation until summary judgment, when the Court would again be required to hold the same claims time-barred under the relevant statute of limitations").

As it turns out, Williams has elected to omit from the pleadings in this case a number of facts that would have further highlighted the untimeliness of his claims. In its sur-reply, Omega represents that its counsel recently received an emailed copy of a verified complaint that Williams filed in the Northern District of Florida, raising many of the same claims as in this action. (Doc. No. 19-1 (Sur-Reply), at 1; *see* Doc. No. 19 (Motion for Leave to File Sur-Reply).) In *Williams v. Omega Labs., et al*, N.D. Fla. No. 4:26-cv-333 (filed July 14, 2026), Doc. No. 1 (Complaint), Williams alleges the following: (1) he received the results of Omega's positive test on August 12, 2020 (*id.* ¶ 18), (2) he obtained independent negative tests on August 13, 2020 (*id.* ¶ 24), and (3) on February 2, 2022, Williams filed a complaint with the Florida Medical Board against, Dr. George Platt, the physician who performed the test on behalf Omega, alleging negligence and

misconduct (*id.* ¶ 31).

A review of the docket from the Northern District of Florida reflects that Williams has actually attempted to litigate these same claims in two earlier actions. In *Williams v. Fla. Med. Bd., et al.*, N.D. Fla. No. 4:23-cv-267 (filed June 20, 2023), Doc. No. 1 (Complaint), Williams brought suit against the Florida Medical Board, Dr. Platt, and Werner, advancing the same factual allegations involving his prior knowledge regarding the testing and its procedures. (*See id.* ¶¶ 4-8, 14.) The 2023 action was dismissed on February 23, 2026, for failure to timely serve. (Doc. No. 84). While that action was still pending, Williams filed another action—this time against Omega and Dr. Platt—on June 12, 2025. (*See Williams v. Omega Labs., et al.*, N.D. Fla. No. 4:25-cv-254, Doc. No. 1 (Complaint).) Once again, he alleged that he was aware of Omega's test results on August 12, 2020, and that he filed a complaint against Dr. Platt on February 2, 2022. (*Id.* ¶¶ 10, 31.) The 2025 action was dismissed for want of federal jurisdiction on September 11, 2025. (Doc. No. 18 (Order of Dismiss) (adopting Doc. No. 10 (Report and Recommendation).)[12] Aside from demonstrating that Williams has already unsuccessfully attempted to litigate these same claims in other courts, these prior actions further underscore that Williams was aware of the facts giving rise to the claims in this action by, *at the very latest*, February 2, 2022, the date he filed the complaint against Dr. Platt with the Florida Medical Board, yet waited more than four years to file in the present action. There can be no doubt that his claims in this action are time-barred, and Williams' attempt to avoid this result through artful pleading further demonstrates bad faith and is made in vain.

---

[12] The Court may take judicial notice of the filings in these other cases. *Rodric v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (citation omitted); *Ghaster v. City of Rocky River*, 913 F. Supp. 2d 443, 454 (N.D. Ohio 2012) (citations omitted).

## IV. CONCLUSION

As explained more fully above, Omega's motion to dismiss (Doc. No. 8) is GRANTED, and Williams' motion to amend (Doc. No. 12) is DENIED. The Court CERTIFIES that an appeal from this decision could not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3). This case is closed.

Dated: August 17, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**